LEMMON, Judge
(concurring).
I believe that in reviewing Petrich’s dismissal, we should equally consider all incidents of incompetence, although disciplinary action had already been taken as a result of the two earlier incidents. Except for the bearing that the two earlier incidents have on the pattern of Petrich’s incompetent performance of duties, I would conclude that the third incident alone did not warrant dismissal under the circumstances of this case.
Substantial questions as to the severity of the discipline were raised by circumstantial evidence of reprisal against Petrich, allegedly because he instituted grievance procedures against his supervisors.
On September 28, 1972 Petrich and 12 other employees from his department signed a statement to the mayor, registering complaints about undue harassment from the operations supervisor.[1] Shortly thereafter Petrich and his attorney, accompanied by several other employees, met with the department director and discussed the complaints and the department’s proposals in response thereto.
On May 3, 1973 Petrich and others again met with the director in furtherance of the complaints. Four days later Petrich received a written reprimand in connection with an assignment on Constance Street the previous month, when he had inspected the wrong property. Although the Commission and the majority did not consider this incident, it is extremely important in my view, since it involves “inspection of the wrong property”, the same act of incompetence for which Petrich was finally dismissed.[2] The *543 fact that an employee has previously been reprimanded or disciplined for an incident should not preclude the appointing authority for referring to that incident, in connection with a dismissal, as part of an overall showing of incompetence.
Because Petrich appealed his one-day suspension in connection with the May 9, 1973 inspection at Penniston Street, the Commission did review that incident. In my view Petrich’s conduct in that matter was insignificant error, since there was general confusion shown in the record as to the procedure which should have been followed. More importantly, an isolated incident of substandard conduct in this respect did not detrimentally affect the operation of the public service, since the procedure' used by Petrich required a follow-up inspection the next month.
On May 15,1973 Petrich and three others filed another grievance. The same day a supervisor was assigned to follow up Pet-rich’s inspection at Penniston Street, the error of which was obvious from the report that he had submitted. The timing of this discipline as to an inconsequential error and the fact that a supervisor came behind Pet-rich immediately with a report, rather than calling his attention to the error as to the procedure used, are Petrich’s strongest suggestion of discrimination. However, the minimum suspension cannot be considered as abusive since the questionable incident followed a written reprimand for a more serious error the previous month.
Two months later the department discovered that the two structures on Gravier Street, which Petrich in October, 1972 had reported as demolished, were still in existence. This incident resulted in his dismissal.
Petrich had apparently inspected the wrong building as part of a program in which every house in that area was to have been inspected. Although called off after discovery of a possible conflict with some federal regulation, the program was reinstated after an eight-month suspension, and Petrich’s error was discovered on reinspection by another employee.
The gravity of Petrich’s error, considered with the fact that shortly before he also inspected the wrong house on Constance Street, supports the severity of the discipline imposed and outweighs the circumstantial evidence suggesting possible discrimination.

. Petrich contended that his troubles actually began earlier when he recommended legal action after inspecting property owned by the mayor. The record failed to show any irregularity or suggestion of discrimination in connection with the handling of this recommendation.

. The Constance Street incident also bears on the issue of the substantial relationship between the cause of the dismissal and the effi *543 cient operation of the public service. The citizen wrongly cited complained with justification to the department, while the disputed violations continued in existence without citation.